MEEKS *v.* THE STATE.

</div>

The evidence in this case, though entirely circumstantial, was sufficient to authorize the verdict, and the trial judge having approved the finding of the jury, this court will not interfere with his discretion in refusing a new trial.

<div align="center">

Argued February 21, — Decided March 1, 1898.

</div>

Indictment for arson.    Before Judge Littlejohn.    Schley superior court.    October term, 1897.

*J. R. Williams,* for plaintiff in error.    *J. M. Terrell, attorney-general,* and *F. A. Hooper, solicitor-general,* contra.

LEWIS, J.    Berry Meeks and his brother Hilliard Meeks were indicted for the offense of arson, namely, burning the dwelling-house of Mack English.    Hilliard Meeks was first put upon trial and convicted, and upon writ of error to this court, the judgment overruling the motion for new trial in his case was affirmed.    *Meeks v. State,* 102 *Ga.* 572.    Berry Meeks was likewise convicted with recommendation to mercy.    A motion for new trial was made by him and overruled, and to the judgment overruling the same he excepts.    The ground relied on by the plaintiff in error is that the verdict is contrary to the evidence.    The testimony in the case was entirely circumstantial.    It appeared that, shortly before the burning, Berry and Hilliard Meeks had a difference with their employer, Mack English, with reference to a settlement growing out of their employment, it being claimed by them that he was due them money which he refused to pay.    The accused at the time showed bad feeling toward his employer.    Subsequently threats were made by both Berry and Hilliard Meeks, of a nature that authorized the inference that they intended to have revenge out of English by burning his house, on account of his defrauding them of money as they claimed.

There was also evidence tending to show that, a day or two before the burning, these two parties with another were overheard making some plot or scheme, the exact nature of which did not appear, but enough to infer that they had in mind some plan of revenge against English.    English and his family were away from home on the night of the fire; of which fact the accused had been apprised.    Tracks were traced from the region of defendant's home to within a few yards of the house that was burnt, and from these premises in a circuitous route back to his home.    One of the tracks indicated that it was made by a shoe that had a peculiar mark or worn place thereon.    The shoes which defendant had on the day after the

burning, when he was arrested, fitted exactly to the tracks, corresponding in every particular as to marks, size, etc. These tracks were made the night of the burning; those going to the premises where the crime was committed being made before the dew fell and those returning after. Upon being arrested the accused desired to change the shoes he had on for another pair in the house, without assigning any reason; and alluded to the burning of English's house before he was charged therewith. These are briefly the circumstantial facts relied upon by the State to connect this defendant with the perpetration of the crime charged. There was proof sufficient to authorize the conclusion that the fire was the act of an incendiary.

The circumstances pointing to defendant's guilt consisted mainly of motive, threats, tracks, and suspicious conduct after arrest. Tracks frequently mislead; motives are often misconstrued; human conduct misinterpreted; and threats are often meaningless boasts. Each one of these strands in the chain of the circumstances before us, separated from the others, may be easily broken, but when all are united, wove together, and point in one direction, we can not say that they do not form a cable sufficiently strong to fasten guilt upon the accused. It is true the defendant undertook to establish an alibi; and if his witnesses told the truth, he was not guilty, but the jury, as they had a right to do, evidently did not credit them. While this testimony does not leave our minds in a state of absolute satisfaction about the guilt of this accused, yet the judge below, who heard the testimony, saw the witnesses and had opportunity of judging of their credibility, having approved the finding of the jury, we do not feel the case authorizes the conclusion that his judgment overruling the motion for new trial was error. One who receives a current of testimony fresh from its living fountain source has a better opportunity to judge of its purity and probative force than he who inspects a mere photograph of it upon cold and lifeless paper. By law the judges of the superior courts of this State are invested with more discretion and power in setting aside verdicts and granting new trials than is conferred upon this court; and where he has approved the finding of the jury by refusing a new

trial, this court does not feel authorized to grant a reversal, except in cases where the verdict is either manifestly unjust, or contrary to law and reason.

*Judgment affirmed. All the Justices concurring.*