## 36361. GILES *v.* THE STATE.

DECIDED OCTOBER 30, 1956—REHEARING DENIED NOVEMBER 16, 1956.

*Victor Davidson, Ed Rozier,* for plaintiff in error.

*George D. Lawrence, Solicitor-General,* contra.

GARDNER, P. J. ■ We see no necessity for setting out the evidence in detail. The defendant was indicted for the offense of arson—illegally burning the dwelling house of his wife. The house was located in Wilkinson County, Georgia. The evidence reveals that the defendant had threatened, on many occasions, to burn the house; that his wife and her mother had ceased to reside in the house on account of threats made against them by the defendant; that the defendant's wife, when she temporarily ceased to live in the house because of such threats, had left a deep freezer in the house, with frozen chickens in the freezer; that she had left in the house certain personal effects of their children; that the defendant, when the wife left her home, lived in a trailer attached to a Buick car, within a few feet of the house which burned; that the house was burned between five and seven a. m. on September 25, 1955; that the defendant removed his car and trailer some seven hundred feet from the dwelling house which burned; that the morning the house burned the defendant was seen at the house, and that although the defendant lived in the trailer there was a light burning in the dwelling house; that the defendant "cranked" his car several minutes before he left the house; that the defendant had removed much of the property from the house before the fire occurred; that the defendant had insured the house in his own name just prior to the fire; that upon searching the defendant's car and trailer, several of the articles which his wife had left in the house were found in the car; that the articles found were several clocks, and some of the clothes of the children. It was proved that the defendant had sold a quantity of chickens which had been left

in the freezer in the house. It was proved that the chickens, when sold, had started to thaw. There is considerable other evidence concerning the unfavorable activities of the defendant. In *Lockhart v. State,* 76 *Ga. App.* 289, 293 (45 S. E. 2d 698), this court said: "Every fire is presumed to be accidental or providential. The burden is on the State, in a case of the sort before us, to prove that the fire was of an incendiary origin and that the accused was the person who did the burning. The accused having been convicted by a jury and his conviction having been approved by the trial court in overruling the motion for a new trial, it is incumbent upon a court of review to construe the evidence in a light most unfavorable to the accused. This is true, for every presumption is in favor of such a verdict. *Vandiviere v. State,* 58 *Ga. App.* 18 (197 S. E. 338) ; *Prosser v. State,* 60 *Ga. App.* 604 (1) (4 S. E. 2d 499) ; *Beckworth v. State,* 60 *Ga. App.* 689 (4 S. E. 2d 707). . . To sustain a conviction, it is not required that the evidence exclude every possibility or inference that may be drawn from proved facts. It is only necessary to exclude reasonable inferences and reasonable hypotheses which may be drawn from the evidence under all the facts and circumstances surrounding the particular case." See also *Graves v. State,* 71 *Ga. App.* 99 (30 S. E. 2d 212). In *Meeks v. State,* 103 *Ga.* 420, 422 (30 S. E. 252), the Supreme Court said: "The circumstances pointing to defendant's guilt consisted mainly of motive, threats, tracks, and a suspicious conduct after arrest. Tracks frequently mislead; motives are often misconstrued; human conduct misinterpreted; and threats are often meaningless boasts. Each one of these strands in the chain of the circumstances before us, separated from the others, may be easily broken, but when all are united, wove together, and point in one direction, we cannot say that they do not form a cable sufficiently strong to fasten guilt upon the accused. *It is true the defendant undertook to establish an alibi; and if his witnesses told the truth, he was not guilty, but the jury, as they had a right to do, evidently did not credit them.* While this testimony does not leave our minds in a state of absolute satisfaction about the guilt of this accused, yet the judge below, who heard the testimony, saw the witnesses and had opportunity of judging of their credibility, having approved the finding of the jury, we do not

feel the case authorizes the conclusion that his judgment over-ruling the motion for new trial was error. *One who receives a current of testimony fresh from its living fountain source has a better opportunity to judge of its purity and probative force than he who inspects a mere photograph of it upon cold and lifeless paper.*" (Italics ours.) See also *Smith* v. *State,* 85 *Ga. App.* 129 (68 S. E. 2d 393). As to the assignments of error on the general grounds, they are without merit.

■ Special ground one assigns error because the defendant contends that during the progress of the trial, the following acts were done by the State: "(1) The solicitor-general had the defendant's wife, Mrs. O. W. Giles, to sit at his table and assist in the prosecution of the defendant in full view of the jury; (2) The solicitor-general, in full view of the jury, had the said wife of defendant assist him in striking the jury; (3) In questioning the witnesses, the solicitor-general would often confer with the said wife of the defendant; (4) That just before the State rested its case, the solicitor-general tendered in evidence the sworn affidavit of the said wife of defendant made for the purpose of obtaining a dispossessory warrant to dispossess defendant of the house which was burned, and was tendered for the purpose of showing motive for the alleged offense.

"Movant contends that as each separate act occurred, defendant filed no objection to the particular act, deeming such particular act of such minor importance as not to be subject to objection, or if sustained would not be of material benefit to defendant. Movant attached and makes affidavit of movant, marked 'Exhibit A' a part of this ground swearing to the truth of above allegations. Movant contends that the cumulative effect of all of these acts on the part of the State on the jury was most injurious and prejudicial to him, showed to the jury that his said wife was the real prosecutor in the case, tended to convince the jury of his guilt and prevented his having a fair and impartial trial and that the State committed these acts for the purpose of prejudicing the jury against the defendant, and that they did so prejudice said jury. Movant contends that although Georgia Code § 38-1604 renders a wife incompetent to give evidence against her husband in such cases, the cumulative acts of the State in thus using said defendant's wife to convict

defendant, and said acts of the wife in the presence of the jury were as eloquent and had the same effect as if the State had placed said wife on the stand as a witness and she had sworn: 'I know the defendant is guilty.' Movant contends that he was thus denied the due process of law provided by Code § 38-1604, and was thus denied his constitutional rights provided by Article I, Paragraph III of the Constitution of Georgia as codified in Section 2-103, which provides that no person shall be deprived of life, liberty or property without due process of law."

Special ground 2 assigns error as follows: "Because movant contends that while the defendant was making his unsworn statement to the jury, denying his guilt and explaining his conduct on the date of the alleged offense, his wife, Mrs. O. W. Giles, was sitting at the table in the courtroom where the solicitor-general usually sat while trying this case, and while in full view of the jury was crying and shaking her head as if in denial of the statements the defendant was making to the jury in his own defense. Movant contends that neither defendant who was making his statement to the jury, nor either of his attorneys, whose entire attention and eyes were on the defendant, either saw or knew of the actions of defendant's wife in regard to his statements to the jury, until several months after the trial of the case, and neither had any opportunity to object to her conduct or file a motion for a mistrial, which would have been done had they known of her acts. Movant contends that this conduct on the part of his wife was grossly prejudicial to him, prejudiced the jury against him, and by reason of same he was denied a fair and impartial trial; that unknowing to him, his wife was disputing each and every statement he was making in his own defense, and tended to cause the jury to decide whether he or his wife was telling the truth. Movant says that although Georgia Code § 38-1604 renders a wife incompetent to give evidence in such criminal case, that her tears and sobbing and denials of his statements to the jury by shaking her head while he was making his statement prevented the jury from giving his statement the weight which Code § 38-415 authorizes the jury to give a defendant's statement; was highly injurious to defendant, tended to convince the jury that his statements to the jury were false and to prejudice the jury against him, and was as injurious to

defendant as if she had gone on the stand and testified: 'The statements of defendant are false.' And the State reaped a benefit from the grossly improper conduct on the part of defendant's wife, to which it is not entitled. Movant contends that by reason of the said acts of his wife, he has been denied his rights of due process of law provided by Georgia Code § 38-1604 as set forth above, and also his rights of due process of law guaranteed by the Constitution of the State of Georgia, Article I, Paragraph III as codified in Code § 2-103, which provided that no person shall be deprived of life, liberty or property without due process of law. Movant further contends that by reason of the above described conduct of his said wife, in full view of the jury, at a time when neither he nor either of his counsel was aware of it and when the State should have known of it he was denied his constitutional rights guaranteed him by Article I, Paragraph V, of the Constitution of Georgia as codified in Code § 2-105, which provides: 'Every person charged with an offense against the laws of this State . . . shall be confronted with the witnesses testifying against him; and shall have a public and speedy trial by an impartial jury.'

"Movant attaches hereto and makes a part of this ground, his own affidavit and affidavits from each of his counsel, marked 'Exhibit A', 'Exhibit B', and 'Exhibit C', showing that neither had any knowledge of the acts of defendant's wife until some months after the trial was ended. Movant also attached hereto and makes it part of this ground, the affidavit of J. C. Horton, marked 'Exhibit D' who swears that he was in the courtroom during the time defendant was making his statement and that defendant's wife, in full view of the jury, was crying and shaking her head as if in denial of his statements to the jury."

We have quoted the two special grounds because we think that they are significant and unusual. All the attorneys representing the defendant and the defendant himself were within a few feet of each other and were within a few feet of the solicitor-general and the wife of the defendant. The special grounds show that neither the defendant nor his attorney knew anything concerning the alleged misconduct of the wife of the defendant until several months later; that the attention of the court was not called to any misconduct of the wife. The counter-showing

of the solicitor-general, in his affidavit as to these charges, put the issue thus formed before the trial court to determine, and the trial court did not abuse his discretion in denying special grounds 1 and 2 of the motion for a new trial.

There was no motion for a mistrial made. In *Jordan* v. *State*, 78 *Ga. App.* 879, 882 (52 S. E. 2d 505), wherein a similar situation was shown, in one of the special grounds the court said: "The defendant contends that the court erred in allowing Mrs. Jordan and another young lady to come and sit before the jury and cry 'pitifully' during the solicitor-general's argument to the jury, and that this crying greatly inflamed and prejudiced the minds of the jurors against the defendant and caused the jury to convict him and to impose the maximum sentence. The motion does not assert that the court observed the alleged impropriety or that the attention of the court was called to the matter in any way during the progress of the trial. No motion for a mistrial having been made and no ruling having been invoked by counsel for the defendant because of such alleged impropriety, there is no basis for review, and this ground is without merit. *Rawlings* v. *State*, 124 *Ga.* 31 (7), 42 (52 S. E. 1); *O'Dell* v. *State*, 120 *Ga.* 152 (4, 5, 6) (47 S. E. 577)." In regard to the misconduct of the wife of the defendant, we call attention to *Avery* v. *State*, 209 *Ga.* 116, 126 (70 S. E. 2d 716) et seq. In that case the prosecutrix made an audible outcry several times during the trial of the case. Two of the jurors were seen looking at the prosecutrix when this happened. In that case there was a motion for mistrial made at the time of these happenings, and the trial court denied the motion for a mistrial. The Supreme Court held that under the circumstances in that case, there was not sufficient cause shown to secure a new trial. Under the facts of the instant case, these special grounds are without merit.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*