## 64260. DUNBAR v. THE STATE.

DEEN, Presiding Judge.

1. Ground 1 complains of the denial of defendant's motion to suppress evidence of a rifle which proved to be connected with the robbery. It was found after the vehicle in which the perpetrators fled had been spotted in a trailer park next to one of the trailers on the premises. While some officers entered the trailer with permission, and eventually arrested the defendants therein, another noticed a strip of bush and oak shrubbery between the trailer lot on which the car was parked and an adjoining trailer, or "between the trailer and the edge of the wood line" where the officer had noticed tire marks "and I looked over in the edge of the woods there in the weeds and there was this weapon." There is no evidence, however, that this location is within the curtilage of the trailer in question, as in *Bunn v. State,* 153 Ga. App. 270 (265 SE2d 88) (1980). In that case there was no probable cause to suspect a criminal act arising from finding a gun and bow and arrows located behind an air conditioner within a couple of feet from the back wall of the owner's apartment in an area separated from the street by a privacy fence. Here, while it is shown that the trailer was on lot no. 3, the boundaries are not given, and the person in control as owner or lessee was one Ronzena Reynolds. The gun was found in a tree-filled weedy area in no way privately contained within the trailer premises.

As pointed out in State v. Belcher, (Fla. App.) 317 S2d 842, the Fourth Amendment protects the citizen only from *unreasonable* searches and seizures, that is, search without warrant of those places where he is entitled to an expectation of privacy; it does not concern itself with mere technical trespasses but with those only which deprive the complainant of his privacy in an unreasonable manner. This defendant (who was under arrest, was not an occupant or resident of the trailer in question, and had no claim to any part of the surrounding trailer park) could not complain that a search of the untended bushy area yielded the weapon used in the burglary for which he was on trial. Where possession is a vital element of the offense, the defendant does not claim the personalty seized and who has no possessory interest in the area must show some other reason for an expectation of privacy in order to contest an illegal search. United States v. Salvucci, 448 U. S. 83 (100 SC 2547, 65 LE2d 619) (1980), overruling the "automatic standing" holding in Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697) (1980). Fourth Amendment protection is primarily directed to one's own home, person, papers and effects, and to one's own reasonable expectation of privacy. A carton observed being hidden by the defendant under a

rock on a bathing beach was held not protected in *Anderson v. State,* 133 Ga. App. 45 (209 SE2d 665) (1974). Drugs hidden in a cement wall in property adjacent to the defendant's were held properly seized without warrant in *Novak v. State,* 130 Ga. App. 780 (204 SE2d 491) (1974). Here the rifle was thrown or hidden in an unkept area between two trailers in a trailer park. Probable cause to search the spot was ample: The getaway car, as shown by the tire tracks, had been backed into this area before being parked beside the trailer where the defendants were arrested. Permission was granted to enter by the person in charge of the trailer, and the defendants were apprehended. The motion to suppress was properly denied.

2. The defendants were indicted in Count 1 with armed robbery by taking $300 from the person of an employee of a Gulf service station by means of a .22 rifle. Count 2 charges them with aggravated assault in that they assaulted the same employee with a broken tire tool, a deadly weapon when used in the manner in which it was handled. The evidence showed that the defendants held up the employee by pointing the rifle at him and making him kneel inside the service station after they took money from him and from the cash register. They then entered into an argument as to whether to kill him or not, and ended by severely beating him with the broken tire tool and leaving him in an unconscious condition.

The lesser crime of aggravated assault, or of possession of a firearm during the commission of a crime, may or may not be included offenses of the greater crime of armed robbery. *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981). They are as a matter of law different offenses under Code § 26-505 (b) but may merge as a matter of fact under Code § 26-505 (a) if one is "established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." *State v. Estevez,* 232 Ga. 316 (206 SE2d 475) (1974). For an example of facts under which the act of aggravated assault merges, being the act used to subdue the victim prior to and for the purpose of taking his money, see *Hizine v. State,* 148 Ga. App. 375 (251 SE2d 393) (1978). In the present case, however, the armed robbery had itself been concluded by asportation of the money while threatening the victim with a rifle; thereafter, in an apparent attempt to kill him to keep him from identifying the robbers, he was severely beaten with the tire tool as charged in the assault count. This constitutes two crimes as a matter of fact. *Harvey v. State,* 233 Ga. 41 (209 SE2d 587) (1974). The defendant was properly sentenced on both counts. No harmful error appears in the jury instructions on aggravated assault.

3. Each defendant took the stand in his own behalf and on direct examination testified that he confessed to the robbery in a tape

recording as a result of police harassment and brutality. Each was on cross-examination questioned about certain statements contained in the tapes about which they had testified for the purpose of showing contradictions and inconsistencies between these statements and testimony given by them at trial. Defendants now urge that the subsequent admission of the tapes in evidence was error because the court made no prior determination of voluntariness and because the criminal enterprise had terminated at the time the statements were made. The defendants themselves, however, first went into the existence and content of the tapes, and no request for a Jackson-Denno hearing was ever made. These issues were accordingly waived. Tape recordings of a confession are admissible where properly identified and authenticated, and where the appellant has been adequately advised of his rights prior to the recording. *Cobb v. State,* 244 Ga. 344, 352 (14) (260 SE2d 60) (1979). The voluntariness of the statements was left by the court entirely to the discretion of the jury, who were properly instructed on this point.

Defendants also contend that the court should have charged without request that each of the joint confessions was admissible only against the person making it. Failure to charge the provisions of Code § 38-414 to this effect has been held error in *Edge v. State,* 144 Ga. App. 213 (240 SE2d 765) (1977) and *Johnson v. State,* 46 Ga. App. 494 (2) (167 SE 900) (1932) as against co-defendants who made no confession or incriminatory statement. The situation is entirely different here where, according to the testimony by these defendants on direct examination, the defendants conferred with each other before doing the tapes. King testified, "So we decided, you know, to make up — say some kind of confession to get out of these, you know." Dunbar testified that King told him, "They made me sign a statement." Then he said, " 'You ought to go ahead and sign one where we can get out of there' . . . I thought about it, you know, and they kept on talking about if I wanted to get out of jail I better go ahead and do it. So I went on and did it." The issue was presented directly to the jury as to whether the statements which the defendants first testified about were voluntary and true or the result of coercion and false. They were instructed in great detail on the necessity of a finding of voluntariness. Under the rather unusual circumstances of this case no error appears.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED JULY 2, 1982 —
REHEARING DENIED JULY 26, 1982.

*Peter Fred Larson,* for appellant.
*Beverly B. Hayes, District Attorney,* for appellee.